**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| TINA HEARD, <u>et al.</u>, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-230 (RBW) |
| | ) | |
| UNITED STATES SOCIAL SECURITY | ) | |
| ADMINISTRATION, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

The plaintiffs, Tina Heard, Pearline Snow, and Carolyn Graham, filed this putative class action against the defendants—the United States Social Security Administration ("SSA"), the United States Department of the Treasury ("Treasury"), and the District of Columbia ("District")—challenging the SSA's referral of debts to Treasury for tax refund offsets, and Treasury's and the District's subsequent actions in effectuating the offsets. Complaint ("Compl.") ¶ 1. Currently pending before the Court is the Federal Defendants' Motion To Dismiss ("Fed. Defs.' Mot."), ECF No. 21, which seeks dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and the District of Colombia's Motion To Dismiss ("District's Mot."), ECF No. 20, which seeks dismissal of the complaint pursuant to Rule 12(b)(6) only.[1] Also pending is the plaintiffs' Motion for Class Certification (Deferred Consideration Requested) ("Class Cert. Mot."), ECF No. 4. Upon careful consideration of the

---

[1] "Federal Defendants" refers collectively to the SSA and Treasury.

parties' submissions, the Court concludes that it must grant the Federal Defendants' motion to dismiss pursuant to Rule 12(b)(1), and deny all other pending motions as moot.[2]

## I.   BACKGROUND

Congress mandates that "[w]henever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made . . . ." 42 U.S.C. § 404(a)(1) (2012). An overpayment occurs when beneficiaries receive payment in excess of the amount they were entitled to receive under the Social Security Act.  See 20 C.F.R. § 404.501(a) (2015).  Recovery methods for overpayments include "reduction in tax refunds based on notice to the Secretary of the Treasury as permitted under Section 3720A of Title 31." 42 U.S.C. § 404(a)(1)(A).  31 U.S.C. § 3720A, the statute that permits a reduction in a person's tax refund to satisfy outstanding debts to the SSA, is implemented through a government-wide program known as the Treasury Offset Program.  See Fed. Defs.' Mem. at 3 (describing the Treasury Offset Program). And, the District entered into a reciprocal agreement with Treasury under which the District withholds tax refunds owed to residents and remits the money to Treasury to offset a District resident's debt.  See D.C. Code § 47-143 (2012); District's Mem. at 5.

---

[2] In addition to the filings already mentioned, the Court considered the following submissions in rendering its decision: (1) the Federal Defendants' Memorandum of Points and Authorities in Support of Motion To Dismiss the Complaint ("Fed. Defs.' Mem."); (2) the Declaration of Rosemary Stricks ("Stricks Decl."); (3) the Supplemental Declaration of Rosemary Stricks ("Supp. Stricks Decl."); (4) the Memorandum of Law in Support of the District of Columbia's Motion To Dismiss ("District's Mem."); (5) the plaintiffs' Opposition to the Federal Defendants' Motion To Dismiss ("Opp'n to Fed. Defs.' Mot."); (6) the Declaration of Carolyn Graham ("Graham Decl."); (7) the Declaration of Tina Heard ("Heard Decl."); (8) the Declaration of Pearline Snow ("Snow Decl."); (9) the plaintiffs' Opposition to Defendant District of Columbia's Motion To Dismiss ("Opp'n to District's Mot."); (10) the Federal Defendants' Reply Memorandum in Support of Motion to Dismiss the Complaint ("Fed. Defs.' Reply"); (11) the District of Columbia's Reply to Plaintiffs' Opposition to Its Motion To Dismiss the Complaint for Failure To State a Claim ("District's Reply"); and (12) the Federal Defendants' Notice of Supplemental Authority ("Fed. Defs.' Notice").

Around the beginning of February 2014, Tina Heard did not receive her federal and state tax refunds. Compl. ¶ 42. Heard contacted the SSA, and was informed that her tax refunds had been intercepted by the SSA to satisfy an outstanding debt for overpayment of survivor benefits. Id. ¶¶ 47, 50. After providing the SSA with her current address, Heard received notices from Treasury and the SSA stating that prior notices regarding the debt and offsets had been mailed to her "last known address"—an address where Heard no longer resided. Id. ¶¶ 38, 45, 46. On February 19, 2014, Heard filed a request for reconsideration with the SSA, and Heard's counsel later sent a demand letter to the SSA in May 2014. Id. ¶¶ 52, 54. As of the date of the filing of the complaint in this Court, the SSA had not contacted Heard about her reconsideration request or demand letter. Id. ¶ 55. After the plaintiffs filed the complaint, the SSA determined that it had mailed Heard's pre-offset notice to the incorrect address, and on that basis, instructed Treasury to return her tax refund on March 2, 2015. Stricks Decl. ¶ 17 ("SSA instructed Treasury to refund the amount offset because Ms. Heard alleged non-receipt of the pre-offset notice and because a third party contacted SSA to report they had received mailings from SSA at the address the agency had used to send notices to Ms. Heard."). The SSA then waived the underlying debt to the SSA. Id. ¶¶ 18–19 & Exhibit ("Ex.") H-3 ("We are writing to tell you that we are waiving the collection of your Social Security overpayment of $3,144.00. This means you will not have to pay this money back.").

In early March 2014, Carolyn Graham did not receive the full amount of her tax refund from the District. Compl. ¶ 73. Graham then received notices from Treasury and the District that a portion of her tax refund was intercepted to satisfy an outstanding debt to the SSA for the overpayment of survivor's benefits. Id. ¶¶ 74–77. The notices also stated that prior notices had been mailed to her "last known address"—an address where Graham no longer resided. Id. ¶ 75.

Graham then filed a request for a hearing, and after the SSA could not locate her hearing request, her counsel sent the SSA a demand letter on January 8, 2015.  Id. ¶¶ 78, 81, 82.  Graham had not received any payment in connection with the offset for her debt to the SSA as of the date of the filing of the complaint, id. ¶ 86; however, after the plaintiffs initiated this suit, the SSA instructed Treasury to return Graham's tax refund and waived the underlying debt, see Stricks Decl. ¶¶ 8–10 ("SSA instructed Treasury to refund the amount [of the] offset because Ms. Graham provided evidence that her current address was different from the address where SSA mailed the pre-offset notice. . . .  [O]n or about April 6, 2015, SSA made a determination to waive collection of the overpayment due to a lack of documentation, and because the cost of collecting the overpayment would likely exceed the total overpayment amount . . . .")

Also in March 2014, Pearline Snow received a notice from the District that her tax refund had been intercepted and applied to a debt owed to the SSA.  Compl. ¶ 60.  Snow received an additional notice from Treasury on March 27, 2014, which stated that her federal tax refund had also been intercepted, and that the SSA previously mailed a notice to her "last known address"— an address where Snow no longer resided.  Id. ¶¶ 62–63.  On April 23, 2014, Snow's counsel sent a demand letter to the SSA.  Id. ¶ 64.  When the complaint was filed in this case, the SSA had not made a decision on Snow's demand letter.  Id. ¶ 66.  However, after the complaint was filed, Treasury refunded the amount of the offset and the SSA waived the overpayment.[3]  Stricks Decl. ¶¶ 26, 31.

## II.    STANDARD OF REVIEW

The Federal Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) presents "a threshold challenge to the [C]ourt's jurisdiction."  Morrow v. United States,

---

[3] The check was returned as undeliverable due to an incorrect address, Stricks Decl. ¶ 30, but was later delivered to and cashed by Snow, Snow Decl. ¶ 27.

723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting <u>Haase v. Sessions</u>, 835 F.2d 902, 906 (D.C. Cir. 1987)).  While the court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged,'" <u>Am. Nat'l Ins. Co. v. FDIC</u>, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting <u>Thomas v. Principi</u>, 394 F.3d 970, 972 (D.C. Cir. 2005)), the plaintiff nonetheless bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction, <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992).  Accordingly, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving [a 12(b)(1) motion]."  <u>Grand Lodge of the Fraternal Order of Police v. Ashcroft</u>, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001).  Moreover, "the court need not limit itself to the allegations of the complaint."  <u>Id.</u> at 14.  Instead, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction [in] the case."  <u>Scolaro v. D.C. Bd. of Elections & Ethics</u>, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).

### III.   ANALYSIS

The plaintiffs initiated this putative class action to challenge the SSA's collection of their social security overpayments through the referral of debts to the Treasury Offset Program.  <u>See generally</u> Compl. ¶¶ 89–141.  Before the Court can reach the merits of the dispute, it must first consider the threshold issue of whether it has jurisdiction over the plaintiffs' claims.  <u>NO Gas Pipeline v. Fed. Energy Regulatory Comm'n</u>, 756 F.3d 764, 767 (D.C. Cir. 2014) ("It is fundamental to federal jurisprudence that Article III courts such as ours are courts of limited jurisdiction.  Therefore, 'we must examine our authority to hear a case before we can determine the merits.'" (quoting <u>Wyo. Outdoor Council v. U.S. Forest Serv.</u>, 165 F.3d 43, 47 (D.C. Cir. 1999))).  The Federal Defendants put forth two grounds why this Court lacks jurisdiction: first,

they argue that the plaintiffs' claims are moot due to the SSA's post-filing refund of the amounts that were allegedly seized improperly, and second, that the applicable statutory and regulatory scheme does not permit the Court to review the plaintiffs' challenge to the agencies' actions. See generally Fed. Defs.' Mem. at 8–11.  As explained further below, the Court concludes that it lacks jurisdiction over the plaintiffs' claims because no case or controversy exists, and as a result, the complaint must be dismissed in its entirety.  Accordingly, the Court does not reach the Federal Defendants' second argument for dismissal for lack of subject matter jurisdiction. Further, because the Court lacks jurisdiction over this dispute, the Federal Defendants' motion to dismiss Counts IV and V of the complaint, the District's motion to dismiss, each pursuant to Rule 12(b)(6), and the pending motion for class certification shall be denied as moot.[4]

### A.  Mootness

 "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."  Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983); see also Leonard v. U.S. Dep't of Defense, 598 F. App'x 9, 10 (D.C. Cir. 2015) ("Article III, Section 2 of the Constitution permits federal courts to adjudicate only actual, ongoing controversies." (quoting Daimler Trucks N. Am. LLC v. EPA, 745 F.3d 1212, 1216 (D.C. Cir. 2013))).  The case-or-controversy requirement dictates that "throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."  Spencer v. Kemna, 523 U.S. 1, 7 (1998).  A court must therefore "refrain from deciding [a controversy] if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-

---

[4] The Court does not reach the remaining motions, including the District's motion to dismiss the complaint under Rule 12(b)(6), because "[a]s a court of limited jurisdiction, [this Court] begin[s], and end[s], with an examination of [its] jurisdiction."  General Motors Corp. v. Envntl. Prot. Agency, 363 F.3d 442, 448 (D.C. Cir. 2004) (emphasis added).

speculative chance of affecting them in the future," <u>Am. Bar Ass'n v. Fed. Trade Comm'n</u>, 636

F.3d 641, 645 (D.C. Cir. 2011), because otherwise, "any opinion as to the legality of the

challenged action would be advisory," <u>City of Erie v. Pap's A.M.</u>, 529 U.S. 277, 287 (2000).

"The burden of establishing mootness rests with the party seeking dismissal, and this burden is a

heavy one." <u>Citizens for Responsibility & Ethics in Wash. v. SEC ("CREW")</u>, 858 F. Supp. 2d

51, 61 (D.D.C. 2012) (citing <u>Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n</u>, 628 F.3d 568,

576 (D.C. Cir. 2010)).

The Federal Defendants argue that the steps taken by the SSA to return to each plaintiff

the sums they allege were improperly appropriated render the plaintiffs' claims moot.  Fed.

Defs.' Mem. at 8–11.  In opposition, the plaintiffs argue that because the Federal Defendants

voluntarily "cease[d] their] objectionable acts during [these] proceedings," they must also show

that "it can be said with assurance that there is no reasonable expectation . . . that the alleged

violation will recur" and that "interim relief or events have completely and irrevocably

eradicated the effects of the alleged violation."  Opp'n to Fed. Defs.' Mot. at 14 (quoting <u>Ctr. for</u>

<u>Food Safety v. Salazar</u>, 900 F. Supp. 2d 1, 15 (D.D.C. 2012)).  "It is well settled that 'a

defendant's voluntary cessation of a challenged practice does not deprive a federal court of its

power to determine the legality of the practice.'"  <u>Friends of the Earth, Inc. v. Laidlaw Envtl.</u>

<u>Servs. (TOC), Inc.</u>, 528 U.S. 167, 189 (2000) (quoting <u>City of Mesquite v. Aladdin's Castle, Inc.</u>,

455 U.S. 283, 289 (1982)).  "If it did, the courts would be compelled to leave the 'defendant free

to return to his old ways.'"  <u>Id.</u> (quoting <u>City of Mesquite</u>, 455 U.S. at 283, and <u>United States v.</u>

<u>W.T. Grant Co.</u>, 345 U.S. 629, 632 (1953)).  The plaintiffs assert that they continue to have a live

claim, because despite the Federal Defendants' post-filing actions, the SSA has not demonstrated

that it will not pursue claimed outstanding debts owed by the plaintiffs through the tax refund

offset procedure.  See Opp'n to Fed. Defs.' Mot. at 14–18; CREW, 858 F. Supp. 2d at 61 ("A

case will not be moot, however, where a defendant has voluntarily stopped the transaction, but

may 'return to [its] old ways.'" (quoting W.T. Grant Co., 345 U.S. at 632).

### 1.  Heard's and Snow's Individual Claims

In support of their argument that Heard continues to have a live claim against the

defendants, the plaintiffs point to certain discrepancies in the Stricks Declaration and her

supporting exhibits.  The SSA identified a $5,294.30 overpayment of Social Security benefits

erroneously paid to Heard, Stricks Decl. ¶ 14, but only explicitly waived $3,144.00, id., Ex. H-3

("We are writing to tell you that we are waiving the collection of your Social Security

overpayment of $3,144.00.  This means you will not have to pay this money back." (emphases

added)).  However, the SSA subsequently sent Heard a letter stating: "As we told you in our

prior letter, you do not have to pay us back the money.  Based on this, your current overpayment

balance is $0.00."  Id., Ex. H-4 (emphases added).  Despite this second letter, it is not clear from

the exhibits alone whether the discrepancy between the overpayment amount ($5,294.30) and the

amount waived ($3,144.00) has itself been waived, resulting in the claimed "overpayment

balance [of] $0.00."  Id., Ex. H-4; see Opp'n to Fed. Defs.' Mot. at 15–16 ("Defendants have not

proved that the Treasury Department could not seize the difference (of $2,439) from Ms. Heard

through a future tax refund offset (based on the original SSA referral challenged in the

Complaint).").[5]  As a result, the plaintiffs argue, Heard's claims are not moot because the

defendants have failed to meet their heavy burden to establish that no "effectual relief" is

available to Heard and that the defendants have "completely and irrevocably eradicated the

---

[5] In further support of their concern as to Heard's balance, the plaintiffs cite 20 C.F.R. § 404.526, which provides
that "[i]f a tax refund for a given taxable year is insufficient to recover an overpayment completely, the case will
remain with the Department of the Treasury for offset, assuming that all criteria for offset continue to be met."

effects of the alleged violation."  Opp'n to Fed. Defs.' Mot. at 16 (citing <u>Ctr. for Food Safety</u>, 900 F. Supp. 2d at 4–5).

The Federal Defendants respond, as stated in the Stricks Declaration, that Heard owes no debt to the SSA, and that the discrepancy between the two letters attached to the Stricks Declaration was the result of a mere clerical error.  Fed. Defs.' Reply at 3; <u>see</u> Stricks Decl. ¶ 21 (Heard's "current overpayment balance is $0.00.").  According to the Federal Defendants, the "SSA waived Plaintiff Heard's debt <u>in its entirety</u> and her balance is '$0.00,'" Fed. Defs.' Reply at 3 (emphasis added), and therefore, there is "no reasonable expectation that the violation will recur" and the SSA's waiver of her debt has "completely and irrevocably eradicated the effects of the alleged violation," <u>see</u> <u>id.</u> at 2–3 (quoting <u>CREW</u>, 858 F. Supp. 2d at 61).

Although the discrepancies in the SSA's communications sent to Heard are unfortunate, the Court agrees with the Federal Defendants for several reasons.  First, because the SSA, in a publicly-filed declaration made under the penalties of perjury, has stated that Heard does not owe any debt with respect to the social security overpayments originally identified, there is no reasonable expectation that the SSA will refer the amount of these payments to Treasury or the District for an offset from any of Heard's future tax refunds.  <u>See</u> <u>Calton v. Babbitt</u>, 147 F. Supp. 2d 4, 8 (D.D.C. 2001) ("Absent a showing of bad faith, representations made by an administrative agency are entitled to a presumption of good faith.").  Second, the SSA's actions—specifically, both by refunding the $3,144.00 that was offset from Heard's tax refunds, and by waiving the <u>entirety</u> of Heard's overpayment balance resulting in the SSA's records showing that she owes $0.00—have completely and irrevocably eradicated the effects of the alleged violation.  As the District of Columbia Circuit has stated, "a case is not moot if a court can provide an effective remedy."  <u>Larsen v. U.S. Navy</u>, 525 F.3d 1, 4 (D.C. Cir. 2008).

Conversely, if events have evolved to the point that the court cannot provide a meaningful remedy to a plaintiff, then no live controversy exists.  See Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir. 1990) (federal court may not decide a case where a decision will not "presently affect the parties' rights").  Here, not only was Heard's tax refund returned to her, but the SSA has also stated that it has no debt to collect from her.  Stricks Decl. ¶¶ 17, 20–22.

The same analysis applies with equal force to Snow's claims.  The SSA identified Snow's original overpayment amount as $5,386.99.  Id. ¶ 24.  Treasury, based on the SSA's referral, offset $2,541.00 from Snow's 2014 tax refund.  Id.  Thereafter, at the SSA's request, Treasury refunded the $2,541.00 to Snow, id. ¶ 30 & Ex. S-3, and the SSA waived her debt of $5,386.99, id. ¶ 27 & Ex. S-2.  Thus, "as a result of the agency's determination to waive Ms. Snow's overpayment, her current overpayment balance is $0.00."  Id. ¶ 28.  Like Heard, Snow has no reasonable expectation that the SSA will refer a debt to Treasury or the District for tax refund offset, and the SSA's remedial actions and statements under oath have extinguished entirely the effects of the SSA's alleged violation.

### 2.  Graham's Individual Claims

The SSA's actions with respect to Graham present a slightly more complicated situation.  Although the SSA identified an overpayment of only $244.00 with respect to Graham, Stricks Decl. ¶ 5, it appears that Treasury and the District each offset $244.00 (for a total of $488.00) from Graham's 2014 tax refund, Graham Decl. ¶¶ 14–15.  After Graham complained about the tax refund offset, Treasury, at the SSA's request, sent her a check for $488.00, Stricks Decl., Ex. G-2, and the SSA informed her that it was "waiving the collection of [her] Social Security overpayment of $244.00," id., Ex. G-3.  After this suit was initiated, "two additional checks were erroneously issued to Ms. Graham: a second check for $488.00 . . . and a check for $244.00."

Supp. Stricks Decl. ¶ 4.  Despite the SSA having issued "stop payment" instructions on these two checks "to avoid a further overpayment to Ms. Graham," id. ¶ 5, Graham cashed the second $488.00 check "believ[ing] that this check was reimbursement for SSA''s underpaying her in 1982 . . . ," Graham Decl. ¶ 30; see also Supp. Stricks Decl. ¶ 5.  In light of these events, and according to the SSA, "Graham's overpayment amount has been waived.  Further . . . Graham had already been refunded the total amount offset by Treasury.  [But], . . . Graham's cashing the second $488.00 check . . . resulted in her receiving a new, separate overpayment . . . ."  Supp. Stricks Decl. ¶ 6; see Opp'n to Fed. Defs.' Mot. at 16 n.3.

According to Graham, this new "overpayment debt," resulting from the erroneous issuance to Graham of the second $488.00 check, forms the basis of a live claim against the defendants.  Opp'n to Fed. Defs.' Mot. at 16 & n.3.  As support for this position, Graham relies on the SSA's own statement that, should the new debt become delinquent, it "will seek recovery from Ms. Graham using its own internal recovery methods" and that if those methods fail, "the new overpayment may at some point in the future become eligible for referral to [the tax refund offset program]."  Supp. Stricks Decl. ¶ 7; see Opp'n to Fed. Defs.' Mot. at 16 ("SSA admits that it may refer a debt of hers for tax refund offset in the future.").  Graham therefore asserts that the SSA cannot say "with assurance that there is no reasonable expectation . . . that the alleged violation will recur" with respect to her.  Opp'n to Fed. Defs.' Mot. at 14 (quoting Ctr. for Food Safety, 900 F. Supp. 2d at 4).

The Court disagrees, because whether Graham's now-existing debt will be referred to the tax refund offset program, and thereafter collected without notice and an opportunity to challenge the debt, presents a purely speculative concern, and not a live claim for the Court to redress at this time.  See, e.g., Friends of Keeseville, Inc. v. Fed. Energy Regulatory Comm'n,

11

859 F.2d 230, 234 (D.C. Cir. 1988) (noting that "[j]udicial review should not . . . be premised on the bare possibility that agency action may ultimately lead to cognizable injury.").  At best, Graham's outstanding debt presents a potential dispute that is not yet ripe for review, and adjudication of Graham's claims is therefore inappropriate at this time.  See Abbott Labs. v. Gardner, 387 U.S. 136, 148–49 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977) (stating that the "ripeness doctrine['s] . . . basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties").  The Court notes, as a practical matter, that if Graham simply returns the money erroneously remitted to her by the SSA, then she will be in the same position as Heard and Snow: she will owe no debt to the SSA, and neither additional time nor judicial resources will need to be expended to ensure Graham is made whole.  See Friends of Keeseville, 859 F.2d at 236 ("We may properly give weight to the interests in judicial economy that are furthered by the avoidance of unnecessary adjudication.").  The Court concludes that, on the record before the Court at this time, Graham does not have a live individual claim against the defendants.

### 3. Whether the Complaint's Class Allegations and Pending Motion for Class Certification Bar Dismissal on the Basis of Mootness of the Plaintiffs' Individual Claims

The plaintiffs filed their class certification motion in February 2015, shortly after the complaint was filed, but requested (with the defendants' concurrence) that its determination be deferred until after the defendants had an opportunity to respond to the complaint and the parties had conducted class-related discovery.  Class Cert. Mot. at 2.  The Court stayed briefing on the

class certification motion in accordance with the parties' request.  See March 13, 2015 Minute

Order.  The Federal Defendants then took action to refund the plaintiffs' money, see Stricks

Decl. ¶¶ 8, 17, 30 (checks were mailed to the plaintiffs in March and April 2015), and filed their

motion to dismiss thereafter in June 2015.  The plaintiffs now assert that, irrespective of the

return of their money, they continue to have an interest in this litigation due to the pending

motion for class certification.  See Opp'n to Fed. Defs.' Mot. at 18–19 ("Plaintiffs therefore have

two independent objectives in this litigation: (1) making themselves whole[,] and (2) benefiting

members of the putative class."); see generally id. at 18–24.

      Whether this case is moot despite the plaintiffs' class allegations and pending motion for

class certification presents an issue of first impression in this Circuit.[6]  The plaintiffs base their

arguments on a line of cases that stand for the proposition that the mootness of a representative

plaintiff's claim in a putative class action does not defeat the existence of a live controversy as to

other class members if the nature of the controversy is: (1) "capable of repetition yet evading

review," e.g., Sosna v. Iowa, 419 U.S. 393, 400 (1975) ("[T]he case before us is one in which

state officials will undoubtedly continue to enforce the challenged statute and yet, because of the

passage of time, no single challenger will remain subject to its restrictions for the period

necessary to see such a lawsuit to its conclusion."); (2) "inherently transitory," e.g., Gerstein v.

Pugh, 420 U.S. 103, 110 n.11 (1975) (in a case involving a Fourth Amendment challenge to

pretrial detention procedures, observing that "[p]retrial detention is by nature temporary, and it is

---

[6] The Circuit, in Samuels v. District of Columbia, noted, without holding, that in a putative class action against the District for failure to address the plaintiffs' grievances with regard to housing, "the District's attempt to provide partial and long-delayed relief to a few tenants [did] not render [the] case moot."  770 F.2d 184, 193 n.5 (D.C. Cir. 1985).  In that case, the defendants had not provided all the named plaintiffs with the administrative hearings they requested, and the complaint alleged that the District had refused to provide such hearings on a class-wide basis.  Id. Those circumstances are distinguishable from the present case, where the agencies have redressed each of the named plaintiffs' complaints, see supra Part III.A, and there is no allegation that the agencies flatly refused to consider complaints regarding the offset of social security overpayments on a class-wide basis, see generally Compl.

most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted[ . . . but t]he individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures."); or, (3) "acutely susceptible to mootness" through the defendants' resolution of putative lead plaintiffs' claims with offers of judgment or settlement, e.g., Weiss v. Regal Collections, 385 F.3d 337, 347 (3d Cir. 2004) ("Although [the plaintiffs'] claims here are not 'inherently transitory' as a result of being time sensitive, they are 'acutely susceptible to mootness' in light of defendants' tactic of 'picking off' lead plaintiffs with a Rule 68 offer to avoid a class action."). The plaintiffs urge that this case falls squarely in the "acutely susceptible to mootness" category as demonstrated by the defendants' refunds to the plaintiffs after the plaintiffs filed suit, which they characterize as a defense tactic to "pick off" the lead plaintiffs merely to avoid a class action. Opp'n to Fed. Defs.' Mot. at 22–23.[7]

In opposition, the Federal Defendants rely heavily on the Supreme Court's pronouncement in Genesis Healthcare Corp. v. Symczyk, __ U.S. __, 133 S. Ct. 1523 (2013), regarding collective actions brought under the Fair Labor Standards Act ("FLSA") to support their argument that the plaintiffs' class allegations and pending class certification motion do not rescue this case from dismissal on mootness grounds. Fed. Defs.' Reply at 5. The issue before the Supreme Court in Genesis Healthcare was whether a collective action suit, i.e., "a suit brought 'on behalf of other employees similarly situated,'" under the Fair Labor Standards Act, could survive an attack on mootness grounds where the defendant made, but the plaintiff

---

[7] The plaintiffs also cite United States Parole Comm'n v. Geraghty, 445 U.S. 388 (1980), which held that "an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied[, because t]he proposed representative retains a 'personal stake' in obtaining class certification sufficient to assure that [Article] III values are not undermined." Id. at 404; see Opp'n to Fed. Defs.' Mot. at 19. The Supreme Court clearly stated, however, that this holding was "limited to the appeal of the denial of the class certification motion." Geraghty, 445 U.S. at 404.

rejected, a Rule 68 offer of judgment that would have fully resolved the plaintiff's claims.
Genesis Healthcare, __ U.S. at __, 133 S. Ct. at 1528–29.  The Court held that the plaintiff
"ha[d] no personal interest in representing putative, unnamed claimants, nor any other continuing
interest that would preserve her suit from mootness" and affirmed the dismissal of the case for
lack of subject-matter jurisdiction.  Id., __ U.S. at __, 133 S. Ct. at 1532.  The Federal
Defendants assert that "[t]he same conclusion follows here."  Fed. Defs.' Reply at 5.

    As the Federal Defendants' recognize, Genesis Healthcare involved collective claims
arising under the FLSA, as opposed to a putative class action under Rule 23.  Given this
distinction, the Court is not persuaded that the Supreme Court's holding in Genesis Healthcare
should control the outcome of this case.  Although the precise question before this Court, i.e.,
whether a case is moot "when the plaintiff has asserted a class claim under [Rule 23], but
receives an offer of complete relief before any class is certified," Pet. for Writ of Cert. at i,
Campbell-Ewald Co. v. Gomez, 577 U.S. __, 136 S. Ct. 663 (2016), was also presented to the
Supreme Court, it did not reach that question in its ultimate opinion in the Campbell-Ewald case,
see generally 577 U.S. at __, 136 S. Ct. at 666 (describing the issues before the Court and
omitting the Rule 23 question presented in the petition for a writ of certiorari).  Without clear
direction otherwise from the Supreme Court or this Circuit, the Court declines to extend Genesis
Healthcare's holding in the FLSA context to this putative Rule 23 class action.

    Genesis Healthcare notwithstanding, the Court is not persuaded that the course of events
in this case represents the kind of "pick off" tactic that should insulate the case from mootness
merely because of a pending motion for class certification.  See generally Deposit Guar. Nat'l
Bank v. Roper, 445 U.S. 326, 339 (1980) ("To deny the right to appeal [a denial of class
certification] simply because the defendant has sought to 'buy off' the individual private claims

of the named plaintiffs would be contrary to sound judicial administration.  Requiring multiple

plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's

tender of judgment before an affirmative ruling on class certification could be obtained,

obviously would frustrate the objectives of class actions . . . ."); Weiss, 385 F.3d at 339–40, 349

(Third Circuit remanded putative class action case to district court with instructions to allow the

plaintiff to file a motion for class certification that relates back to the filing of the complaint

despite the defendants' pre-certification offer of judgment to the plaintiff).  As the Stricks

Declaration makes clear, the SSA, albeit with some errors, engaged its internal procedures to

address the plaintiffs' administrative complaints, corrected its errors with respect to the

plaintiffs' tax refund offsets, and determined that a waiver of the plaintiffs' debts was

appropriate.  See Stricks Decl. ¶ 7 (SSA processed Graham's request for reconsideration of the

offsets as an implied request for waiver consistent with SSA policy); id. ¶ 16 (same as to Heard);

id. ¶ 25 (same as to Snow).  The Court is not prepared to conclude, on this record, that an

agency's administrative decision to correct a mistake by returning the funds demanded by the

plaintiffs qualifies as the type of "pick off" defense tactic that insulates a putative class action

from the constitutional requirement of the existence of a live case or controversy.  And even if

Weiss was binding precedent on this Court, under the circumstances present here, the plaintiffs'

claims would still be moot despite the pendency of their motion for class certification.  The

complaint must therefore be dismissed in its entirety due to the absence of a case or controversy

for the Court's resolution.

## CONCLUSION

For the reasons stated above, the Federal Defendants' motion to dismiss the complaint

pursuant to Rule 12(b)(1) shall be granted.  Because the Court lacks jurisdiction to resolve the

defendants' motions to dismiss under Rule 12(b)(6) and the pending class certification motion, those motions shall be denied as moot.[8]

       **SO ORDERED** this 15th day of March, 2016.

REGGIE B. WALTON
United States District Judge

---

[8] The Court shall contemporaneously issue an Order consistent with this Memorandum Opinion.